UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MASON'S AUTOMOTIVE COLLISION
CENTER, LLC                                                                                            PLAINTIFF

v.                                         No. 2:21-cv-02153

AUTO-OWNERS INSURANCE COMPANY                                                      DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Auto-Owners Insurance Company's (Auto-Owners) motion (Doc. 44) to reconsider the Court's class certification order (Doc. 40) and brief in support (Doc. 45) of the motion. Plaintiff Mason's Automotive Collision Center, LLC (Mason's) filed a response in opposition (Doc. 46). The Court granted in part Mason's motion for class certification, and the Court certified Arkansas-only classes under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). (Doc. 40, pp. 11–14). Auto-Owners asks the Court to reconsider that class certification order. For the reasons stated below, the motion to reconsider is GRANTED and the class action is DECERTIFIED.

**I.     Background**

The Court has discussed the factual background of this case in its earlier certification order (Doc. 40), but the Court will include the background facts here to the extent necessary to resolve this motion. Defendant Auto-Owners issued a commercial insurance policy to Plaintiff Mason's Automotive for Mason's property in Fort Smith. (Doc. 8, ¶ 12). In May 2019, Mason's submitted a claim under the policy for tornado damage. *Id.* ¶ 23. Auto-Owners issued partial payment to Mason's, and in that payment applied a coinsurance penalty. *Id.* ¶ 26.

Coinsurance is a standard feature of property insurance. (Doc. 32, p. 3). Coinsurance provisions discourage policy holders from underinsuring their property since most losses are

1

partial, not total, losses. *Id.* Underinsuring property allows the insured to pay lower premiums, leaving insurance companies to pay a higher percentage of claims at the upper end of policy limits. *Id.* Coinsurance provisions discourage underinsuring property by applying a penalty that forces the insured to share proportionally in the loss. *Id.* Mason's policy contained such a provision. (Doc. 8-1, p. 64). To calculate how much Auto-Owners had to pay under the coinsurance provision, Auto-Owners needed to determine the "value of the Covered Property." *Id.* Under Mason's policy, as well as many Auto-Owners policies, certain property is not covered, including "Foundations of buildings, structures, machinery or boilers if their foundations are below: (1) the lowest basement floor; or (2) The surface of the ground, if there is no basement . . . ." *Id.* at 55. Mason's argues that Auto-Owners included the value of the covered property's foundation, which inflated its value and decreased the amount Auto-Owners paid under the policy. *See* Doc. 8, p. 7.

Mason's sued Auto-Owners individually, alleging breach of contract and bad faith. Mason's also seeks to pursue these claims, as well as a declaratory judgment, on behalf of a class. Mason's moved for class certification (Doc. 28). In support of its motion, it included numerous documents, surveys, and an expert report. (Docs. 27, 28). Mason's documents indicated that Auto-Owners uses software such as Xactimate or Verisk to compute property valuations. (Docs. 27-5, 27-6). The documents also suggest that Xactimate is Auto-Owners' preferred valuation program. (Doc. 28-8). Mason's expert opined that "some component of properly constructed foundations of buildings and structures are always below the surface of the ground." (Doc. 27-18, p. 3). Mason's argued this shows Auto-Owners always includes foundations when calculating coinsurance penalties. (Doc. 30, p. 13).

Auto-Owners opposed certification. (Doc. 32). To support its position, Auto-Owners provided two expert reports (Docs. 32-1, 32-4) and a declaration from its manager of commercial

property claims (Doc. 32-2). Auto-Owners' experts explained why insurance companies include the value of foundations when valuing properties, even if the foundation is excluded from coverage. (Doc. 32-1, p. 3). Auto-Owners experts also explained that some foundations are above the lowest basement floor or the surface of the ground, directly rebutting Mason's expert. (Doc. 32-4, p. 6–7). For example, some properties only have partial basements and others have foundations on the surface of the ground due to erosion or improper construction. *Id.* In his declaration, Auto-Owners' commercial property claims manager explained that although Auto-Owners does use Xactimate and Verisk, those are not the only programs it uses. (Doc. 32-2, ¶¶ 5–6). Also, Auto-Owners uses multiple valuation methods that may or may not include a property's foundation when calculating the final valuation. *Id.* ¶¶ 11–14. Even if a foundation is used, the value the foundation added may not be broken out as a line-item because the method only provides a bottom-line. *Id.* ¶ 14.

In an earlier order, the Court denied certification of a multi-state class of Auto-Owner's policy holders. (Doc. 40, p. 5–8). The Court did, however, certify the following Arkansas-only class:

> All Arkansas residents who have or had a commercial property damage policy of insurance with Auto-Owners at any time from September 24, 2016 to the present, whose foundations were excluded from coverage by the terms of the policy, and who received a payment for a property damage claim which payment was reduced by the Coinsurance provisions of the policy pursuant to a property valuation that included the cost of foundations.

*Id.* at 13. Following certification, Auto-Owner's moved for summary judgment (Doc. 41) and moved the Court to reconsider its certification decision (Doc. 44).[1] The Court held the summary

---

[1] Auto-Owners also sought permission from the Eighth Circuit to appeal the order under Federal Rules of Civil Procedure 23(f). (Doc. 45, n. 1). The Eighth Circuit denied Auto-Owners permission to appeal. (Doc. 49-1).

judgment motion in abeyance pending resolution of this motion.  (Doc. 48).

## II. Legal Standard for Reconsideration

The Federal Rules of Civil Procedure do not mention motions for reconsideration.  Because of this, federal courts construe such motions as arising under either Rule 59(e) or Rule 60(b).  *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir. 1988).  "Motions under Rule 59(e) serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence and cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Akpovi v. Douglas*, 43 F.4th 832, 837 (8th Cir. 2022) (cleaned up).  Rule 60(b) lists circumstances that warrant reconsideration, including mistake, newly discovered evidence, and any other reason that justifies relief.  A rule 60(b) motion "is not a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999).  Rule 60(b) motions require the moving party to demonstrate "exceptional circumstances" which warrant reconsideration. *Arnold v. Wood*, 238 F.3d 992, 998 (8th Cir. 2001).

Independent of the reconsideration standard, a court has a duty to assure a class remains certifiable under Rule 23.  *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 830–31 (8th Cir. 2016) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999)).  "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Id.* at 830 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  The Federal Rules also grant the Court authority to revisit a certification order: "An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C).  A district court can decertify a class it previously certified if the issues underlying certification are "more 'nuanced' than the district court had initially considered." *Webb*

*v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017) (citing *Day*, 827 F.3d at 830).

### III.   Legal Standard for Class Action

Federal Rule of Civil Procedure 23 governs class action lawsuits. "District courts have broad discretion to determine whether certification is appropriate." *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020) (quotation omitted). A certified class must meet all of the Rule 23(a) elements and one of the Rule 23(b) subsections. *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018). The Rule 23(a) elements are commonly referred to as "numerosity, commonality, typicality, and fair and adequate representation." *Id.* at 1037 (quoting *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013)). District courts must conduct a rigorous analysis—considering all parties' evidence—of all the Rule 23 requirements. *Id.* at 1036 (citation omitted).

Rule 23(b)(3) classes can be certified when a court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry under 23(b)(3) is "far more demanding" than the commonality inquiry of 23(a). *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (citation omitted). To determine predominance, courts must analyze "whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from class member to class member." *Webb*, 856 F.3d at 1156 (cleaned up). If individual questions overwhelm the questions common to the class, predominance is not satisfied. *Ebert*, 823 F.3d at 478–79.

Rule 23(b)(2) classes seek injunctive relief that applies to all members of the class. *Postawko*, 910 F.3d at 1039–40 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). To certify a class under this subsection, the Rule requires that "the party opposing the class [must

have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These class claims must be cohesive. *Postawko*, 910 F.3d at 1039 (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010)); *see generally* William B. Rubenstein, 2 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 4:34 (6th ed. 2022). The 23(b)(2) cohesiveness requirement is more stringent than the 23(b)(3) predominance requirement because (b)(2) classes do not allow for opt-outs and (b)(2) classes do not require notice to members. *Ebert*, 823 F.3d at 480 (citation omitted).

## IV. Analysis

The Court will decertify both the Rule 23(b)(2) class and the Rule 23(b)(3) class because it finds the issues more nuanced than it originally considered. The Court has again engaged in the "rigorous analysis" of the parties' evidence required at the class certification stage. *See Postawko*, 910 F.3d at 1036. The Court finds that class claims are not cohesive, and the Court will not be able to issue injunctive relief with respect to the class as a whole. Therefore, the class cannot be certified under Rule 23(b)(2). Further, the Court finds that individual issues will predominate over the common question, so the class cannot be certified under 23(b)(3).

### A. The Rule 23(b)(2) class

Before certifying a Rule 23(b)(2) class, a court must find that the class claims are cohesive. *Postawko*, 910 F.3d at 1039 (citing *Avritt*, 615 F.3d at 1035). The cohesiveness requirement stems from the need to fashion a "single injunction or declaratory judgment [that] would provide relief to each member of the class." *Ebert*, 823 F.3d at 480 (quoting *Dukes*, 564 U.S. at 360). Courts use the cohesiveness requirement to ensure the class action format is the most efficient means to resolve injunctive or declaratory judgment issues for an entire class, rather than individualized

issues. Rubenstein, *supra*, § 4:34.

A Rule 23(b)(2) class is not cohesive when disparate factual circumstances make issues of liability and relief highly individualized, rather than capable of resolution in a single question. *Ebert*, 832 F.3d at 481. Furthermore, just because a general finding of a defendant's liability "*could* impact the entire class as a whole," that does not mean a class is the most efficient method of resolving a class's claims. *Id.* (emphasis in original). For example, a class is not cohesive when a court must determine the cause of vapor contamination on a property-by-property basis to see if a defendant is liable. *Id.* at 479. A class is also not cohesive when class members try to aggregate discrete civil rights claims under the First and Fourth Amendments into a class even though the members experienced different harms. *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021). Conversely, a class is cohesive when a prison system inadequately applies a uniform screening and treatment policy for a disease that could lead to the same constitutional violation for every inmate afflicted with the disease. *Postawko*, 910 F.3d at 1040.

Even when there is a common question regarding class members' claims, a class cannot be certified under subsection 23(b)(2) "when the defendant's 'conduct cannot be evaluated without reference to the individual circumstances of each plaintiff.'" *Harris*, 953 F.3d at 1038 (quoting *Avritt*, 615 F.3d at 1036). In *Harris*, the Eighth Circuit decertified a class of railroad employees pursuing ADA claims. *Id.* at 1033. The plaintiffs sought injunctive relief relating to the defendant's fitness-for-duty evaluations. *Id.* at 1034. The court reasoned that whether the evaluations were discriminatory could not be resolved without individualized inquiries into whether the evaluations were consistent with business necessity for over 650 different jobs. *Id.* at 1037–38. Evaluating business necessity for over 650 unique jobs defeated both the predominance and cohesiveness requirements. *Id.* at 1037. In short, even though there was a common question

about the validity of the fitness-for-duty evaluations, the individualized inquiries into the defendant's affirmative defenses under the ADA prevented class certification.

Here, there is a common question about whether Auto-Owners "may include the value of an otherwise excluded foundation when determining the value of Covered Property in calculating any applicable Coinsurance premium." (Doc. 40, p. 9–10). But that common question's answer is not uniform because of several underlying individual questions. *See Harris*, 953 F.3d at 1038 (citing *Ebert*, 823 F.3d at 480–81). First, the Court would need to consider whether the insured's foundation was excluded. The answer to this question may not be the same across every class member because each property's foundation may be underground or on the ground's surface due to erosion or poor construction. *See* Doc. 32-2, ¶ 16; Doc. 32-4. p. 6-7. Second, the Court would need to consider how the class members' property was valued. Mason's does not dispute Auto-Owners' evidence that it uses multiple valuation approaches and various software programs to produce an estimate of the value of the insured's property. (Doc. 32-2, ¶¶ 5–7, 9). Third and finally, different appraisals produce different results, often not revealing whether the foundation was included in an estimate. *Id.* ¶¶ 12, 14.

These individualized issues would need to be answered before the Court could fashion a declaratory judgment regarding Auto-Owners' policy. As the *Ebert* court recognized, just because a finding of general liability could impact the entire class, that does not make a class action the most efficient method of resolving claims. 823 F.3d at 481. This is particularly the case when a court would have to engage in many individualized inquiries to provide the appropriate answers for class members. *Harris*, 953 F.3d at 1037. Due to the individualized questions discussed above, any declaratory relief the Court might enter would not "respond to the alleged harm on a uniform, generally applicable basis." *Postawko*, 910 F.3d at 1040. Therefore, the 23(b)(2) class cannot be

certified because it lacks cohesiveness. The 23(b)(2) class is decertified.

    **B.       The Rule 23(b)(3) class**

Rule 23(b)(3) classes must satisfy both the predominance and superiority inquiries. The predominance requirement is "far more demanding" than the Rule 23(a) commonality requirement. *Webb*, 856 F.3d at 1156 (citation omitted). "Predominance gauges 'the relationship between common and individual questions in a case.'" *Custom Hair Designs by Sandy v. Cent. Payment Co.*, 984 F.3d 595, 601 (8th Cir. 2020) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). A class can still be certified if some individual matters, such as damages, need to be tried separately, but that is only if a court finds that common issues predominate the individual issues. *See id.*

The parties dispute the importance of Auto-Owners' form contract provisions for coinsurance. *Compare* Doc. 30, p. 1 ("Because this case arises from the interpretation of a form contract which is identical for each class member, it is a 'classic case for treatment as a class action.'"), *with* Doc. 45, p. 4 ("[E]ven if the 'form contract' was the same, Auto-Owners identified numerous individualized issues concerning Auto-Owners' performance under that contract"). The Eighth Circuit does not have a bright-line rule that when class members litigate form contracts or contracts with form provisions, those common questions predominate over individualized issues. The Eighth Circuit has upheld and certified classes challenging form provisions or uniform contracts. *See Custom Hair Designs by Sandy*, 984 F.3d at 601 (predominance satisfied when class members alleged a common scheme of fraud or a term common to all contracts); *see also McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (predominance satisfied when all class members entered identical or substantially similar contract with the defendants). But the Eighth Circuit has also struck down class actions challenging form legal complaints and contracts with similar or

identical easements. *See Webb*, 856 F.3d at 1157 (individual issues prevented certifying a class challenging similar easements); *Powers v. Credit Mgmt. Servs. Inc.*, 776 F.3d 567 (8th Cir. 2015) (predominance and commonality not satisfied even though class members challenged a standard-form legal complaint).

In one example of decertifying a class with uniform provisions, the *Powers* court reversed certification of a class that challenged form debt collection complaints under the Fair Debt Collection Practices Act. 776 F.3d at 569. The plaintiffs there challenged a collection agency's use of form legal complaints to initiate Nebraska state court legal proceedings. *Id.* at 567–72. The plaintiffs claimed the form complaints were facially invalid under the FDCPA based on Nebraska state law. The Eighth Circuit noted the plaintiffs' state law theory could be incorrect, but even if the theory was correct, that would lead to "many individualized inquiries . . . to resolve class members' claims." *Id.* at 571. The court explained each plaintiff's collection records would need to be evaluated to answer four different questions before determining if the defendants were liable. *Id.* at 572. Because each of these individualized inquiries was necessary despite the form complaint, the class did not meet commonality, predominance, or superiority under Rule 23.

The same reasoning applies here. Mason's asserts that the Court can find all of the information it needs to determine liability and damages in each class member's claim file. (Doc. 30, p. 2). Auto-Owners asserts it is not so simple. (Doc. 45, p. 5). Auto-Owners provided evidence that the claim files do not contain the information the Court needs to establish liability or damages. (Doc. 32-2, ¶ 16). The Court is persuaded that it would need to evaluate each member's claim files to evaluate liability and damages. The *Powers* court rejected certification of a class for similar reasons, as the court would need to evaluate each class members' legal records before determining the defendant's liability. 776 F.3d at 572. A similar file-by-file review would

be necessary here.

At bottom, although the form coinsurance provisions are uniform and Mason's theory of liability may be correct,[2] the Court would have to conduct too many individualized inquiries to warrant certification. Such inquiries include: (1) what type of foundation the class member's property has; (2) whether the claim file reflects the type of foundation; (3) what valuation approach Auto-Owners used; (4) what valuation software Auto-Owners used; and (5) whether the valuation software/approach included or excluded the value of the foundation in the overall property valuation. As stated above, the coinsurance provision only applies to certain foundations, and Auto-Owners has asserted that it uses multiple valuation software programs and different valuation methods. (Doc. 32-2, ¶¶ 5–7, 9). To resolve the question of liability, the Court must conduct a property-by-property analysis. The Eighth Circuit has twice held a property-by-property analysis shows individual questions predominate over the common questions. *See Webb*, 856 F.3d at 1157; *Ebert*, 823 F.3d at 480–81. *Webb* is especially persuasive here because that court held even though the plaintiff's claims involved substantially similar easement contracts, individual questions nevertheless predominated. 856 F.3d at 1156–57.

To conclude, individualized issues predominate over any common question that the proposed class members share. Mason's has not offered evidence showing that the Court would not have to conduct these individualized inquiries. As a result, the proposed class cannot meet the "far more demanding" 23(b)(3) predominance requirement. *Id.* at 1156 (quotation omitted). The

---

[2] The Court does not express any thoughts on the merits of Plaintiff's claim. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.)

Rule 23(b)(3) class is therefore decertified.[3]

**V.    Conclusion**

IT IS THEREFORE ORDERED that Defendant Auto-Owner's motion to reconsider (Doc. 44) is GRANTED.  The Court's July 13, 2022 order certifying Rule 23(b)(2) and Rule 23(b)(3) classes (Doc. 40) is VACATED and the class action is DECERTIFIED.

IT IS SO ORDERED this 3rd day of November, 2022.

/s/ P. K. Holmes, III

P.K. HOLMES, III
U.S. DISTRICT JUDGE

---

[3] Because both classes will be decertified, the Court will not address Auto-Owner's arguments regarding the fail-safe classes.