UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MASON'S AUTOMOTIVE COLLISION
CENTER, LLC                                                                                          PLAINTIFF

v.                                           No. 2:21-cv-02153

AUTO-OWNERS INSURANCE COMPANY                                            DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Auto-Owners Insurance Company's (Auto-Owners) motion (Doc. 41) for summary judgment and brief in support (Doc. 42) of the motion. Plaintiff Mason's Automotive Collision Center, LLC (Mason's) filed a response in opposition (Doc. 57). Auto-Owners replied (Doc. 59). The Court has reviewed the parties' briefs and statements of facts (Docs. 43, 56, 58). For the reasons stated below, Auto-Owners' motion for summary judgment is GRANTED.

**I.    Background**

The Court has discussed the factual background of this case in its earlier certification orders (Docs. 40, 50), but recites the facts relevant to the present motion. Auto-Owners issued a commercial insurance policy to Plaintiff Mason's for Mason's property in Fort Smith. (Doc. 8, ¶ 12). In May 2019, Mason's submitted a claim under the policy for tornado damage. *Id.* ¶ 23. Auto-Owners issued partial payment to Mason's, which applied a coinsurance penalty. *Id.* ¶ 26.

Coinsurance is a standard feature of property insurance. (Doc. 32, p. 3). Coinsurance provisions discourage policy holders from underinsuring their property since most losses are partial, not total, losses. *Id.* Underinsuring property allows an insured to pay lower premiums, leaving insurers to pay a higher percentage of claims at the upper end of policy limits. *Id.*

1

Coinsurance provisions discourage underinsuring property by applying a penalty that forces the insured to share proportionally in the loss.  *Id.*  Mason's policy contained such a provision.  (Doc. 8-1, p. 64).  To calculate how much Auto-Owners had to pay under the coinsurance provision, Auto-Owners needed to determine the "value of the Covered Property."  *Id.*  Mason's policy did not cover certain property, including "[f]oundations of buildings, structures, machinery or boilers if their foundations are below: (1) the lowest basement floor; or (2) The surface of the ground, if there is no basement . . . ."  *Id.* at 55.  Mason's argues that Auto-Owners included the value of the covered property's foundation, which inflated the property's value and decreased the amount Auto-Owners had to pay under the policy.  *See* Doc. 8, p. 7.

A tornado damaged Mason's property in May 2019, and Auto-Owners assigned Brian Doherty as the adjuster.  (Doc. 56, ¶¶ 12, 24).  While evaluating the claim, Auto-Owners prepared four statements of loss, which included a coinsurance penalty.  In the first three statements of loss, Auto-Owners based its valuation of Mason's property on either an Xactimate or Verisk valuation.  (Docs. 27-20, 27-21, 27-24).  The Xactimate and Verisk valuations included the foundation's value.  (Docs. 27-6, 27-6).  Mason's disputed the valuation as improper.  (Doc. 56, ¶ 14).  Auto-Owners had previously tried to work with Mason's to reconcile the property's valuation with the policy limits, but Mason's never followed through.  (Doc. 56, ¶¶ 8–10).  After Mason's disputed the valuation, Auto-Owners hired CBRE, a national real estate appraiser, to conduct a new appraisal of the property.  (Doc. 56, ¶ 15).  Mr. Doherty then prepared a fourth and final statement of loss based on the CBRE valuation.  (Doc. 41-9).  After preparing the final statement of loss, Auto-Owners calculated that it still owed Mason's $14,595.66, and Auto-Owners issued a check for that amount.  (Doc. 41-6).  In total, Auto-Owners issued Mason's checks totaling $69,124.01.

*Id.*

Mason's sued Auto-Owners, alleging breach of contract, unjust enrichment, and bad faith. Mason's also seeks a declaratory judgment. Mason's brought the breach of contract, unjust enrichment, and declaratory judgment both individually and on behalf of a class. The Court previously refused to certify a class because individual issues predominated over class issues. *See* Doc. 50. Auto-Owners now moves for summary judgment on all but one count of Mason's complaint.

## II.    Legal Standard

On a summary judgment motion, the moving party has the burden to show there is no genuine dispute of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To show a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views all evidence and draws all inferences in the nonmovant's favor. *Danker v. City of Council Bluffs*, 53 F.4th 420, 423 (8th Cir. 2022). "To survive a motion for summary judgment, the nonmoving party must substantiate [their] allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539

(8th Cir. 2014) (cleaned up).

### III.     Analysis

Auto-Owners moves for summary judgment on Mason's breach of contract,[1] unjust enrichment, and bad faith claims along with Mason's request for a declaratory judgment and punitive damages. The Court will consider Mason's claims in turn.

### A.     Declaratory Judgment

Count 1 of Mason's complaint seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201. In its complaint, Mason's asked the Court to declare "that the contracts prohibit [Auto-Owners] from including the cost of a building's foundation when applying its Coinsurance provisions." (Doc. 8, ¶ 47). Mason's response to the summary judgment seeks a different declaration: "that Mason Automotive's contract did not allow Auto-Owners to include the foundation to calculate its coinsurance penalty when it did not determine if the foundation was above the surface of the found or above the basement floor." (Doc. 57, p. 11). The Court will consider both requests. Auto-Owners argues the declaratory judgment request should be dismissed because it differs from the policy language. Alternatively, Auto-Owners argues the requested declaratory judgment duplicates the breach of contract claim.

Courts are under no duty to declare the rights of parties under the Declaratory Judgment Act. *Alsager v. Dist. Ct. of Polk Cnty.*, 518 F.2d 1160, 1163 (8th Cir. 1975). Courts can use two principles to guide decisions whether to issue a declaratory judgment: (1) whether the judgment will clarify or settle the legal relations at issue; and (2) whether the declaration will "afford relief

---

[1] Mason's asserts two breach of contract claims. Count 2 alleges Auto-Owners breached its contract with Mason's and the class by adding the cost of replacing the foundation to the covered property's value. (Doc. 8, ¶ 53). Count 4 is Mason's individual breach of contract claim that Auto-Owners refused to pay a valid claim. *Id.* ¶ 62. Auto-Owners seeks summary judgment on only Count 2. (Doc. 42, p. 2 n.1). Count 4 remains pending for trial.

from [] uncertainty, insecurity, and controversy." *Id.* (quotation omitted). Other district courts in this Circuit routinely dismiss declaratory judgment claims that duplicate breach of contract claims. *See, e.g.*, *Reeves v. 21st Century Centennial Ins. Co.*, No. 4:22-cv-00270-JAR, 2022 WL 2209412, at *3 (E.D. Mo. June 21, 2022) (collecting cases); *see also Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 629 (7th Cir. 2022) (affirming decision to dismiss declaratory judgment claim when the district court addressed substantively identical contract claims on the merits). The Court will decline to issue either of the requested declarations.

The request in Mason's complaint is improper because it rewrites the policy language. Mason's asks the Court to declare that Auto-Owners may never consider the value of a property's foundation when applying the coinsurance provision. The policy's plain language forecloses that request. To apply the coinsurance provision, Auto-Owners needed to determine the "value of the Covered Property." (Doc. 8-1, p. 64). The policy goes on, "Covered Property does not include: Foundations of buildings, structures, machinery or boilers if their foundations are below: (1) the lowest basement floor; or (2) The surface of the ground, if there is no basement . . . ." *Id.* at 55. This language does not categorically prevent Auto-Owners from using a building's foundation. Auto-Owners' experts explained that some foundations are above the lowest basement floor or the surface of the ground, such as when properties only have partial basements. (Doc. 32-4, p. 6–7). The Court will not enter a declaratory judgment that rewrites the policy.

Mason's request for a declaratory judgment in its summary judgment briefing fares no better. That request focuses on if Auto-Owners could use Mason's foundation in its valuation without first determining if the foundation was covered property. The Court finds this request duplicates the breach of contract claims. Mason's first contract claim argues Auto-Owners cannot include the cost of replacing the foundation to the covered property's value. The second claim,

5

not challenged in this motion, argues Auto-Owners failed to pay a valid claim. Resolving the breach of contract claims will necessarily resolve what Auto-Owners was allowed to do under the policy. For these reasons, Auto-Owners is entitled to summary judgment on Count 1.

### B. Breach of Contract

Count 2 of Mason's complaint alleges Auto-Owners breached its contract with Mason's and the class by adding the cost of replacing the foundation to the covered property's value. (Doc. 8, ¶ 53). "The elements of a common law breach of contract claim in Arkansas are: (1) an enforceable contract exists, (2) the defendant has a duty under the contract, (3) the defendant violated that duty, and (4) the plaintiff was damaged." *Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 980 (8th Cir. 2021) (citing *Smith v. Eisen*, 245 S.W.3d 160, 168–69 (Ark. Ct. App. 2006)). Mason's has the burden of proof on each element. *Bank of America, N.A. v. JB Hanna, LLC*, 766 F.3d 841, 852 (8th Cir. 2014) (citing *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 33 S.W.3d 128, 133 (Ark. 2000)). Auto-Owners argues that Mason's cannot prove breach or damages.

The parties dispute whether Auto-Owners' final statement of loss improperly included the property's foundation. Auto-Owners argues that the final statement of loss was based on the CBRE valuation it ordered after Mason's disputed the property's value. Mason's argues otherwise, but does not point to any probative evidence. Auto-Owners' final statement of loss is accompanied by a letter from Mr. Doherty, the Auto-Owners claims representative. (Doc. 41-9, p. 2–6). The last page of the letter states that "[Auto-Owners'] revised statement of loss outlin[es] co-insurance adjustment *based on the CBRE valuation*," and the letter attaches the CBRE valuation. *Id.* at 6 (emphasis added). The CBRE valuation does not contain any language that shows the value of property's foundation was added to the overall value.

Mason's instead points to Auto-Owners' initial statements of loss, which were based on

6

earlier valuations that included the foundation's value. *See* Docs. 27-20, 27-21, 27-24. But Mason's points to no evidence that the final statement of loss had the value of the foundation included. Instead, Mason's argues "[t]he fact that CBRE's appraisals do not show that CBRE include [sic] foundation value in its estimate of the property's value does not mean that value was not included." (Doc. 56, ¶ 15). This statement is not evidence. Without probative evidence that the final statement of loss incorporated the foundation's value, Mason's cannot defeat summary judgment on speculation that the CBRE appraisal included the foundation's value. *See Clay*, 754 F.3d at 539. Based on the undisputed record evidence, Mason's cannot meet its burden to show that Auto-Owners breached its contract. And because there is no evidence of breach, Auto-Owners is entitled to summary judgment on Count 2.

    C.    **Unjust Enrichment**

Count 3 of Mason's complaint alleges that Auto-Owners unjustly enriched itself by accepting Mason's insurance premiums but not paying claims in accordance with the contract. (Doc. 8, ¶¶ 56–59). Under Arkansas law, if there is an express contract between the parties, a party generally cannot pursue an unjust enrichment claim. *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606 (8th Cir. 1999); *KBX, Inc. v. Zero Grade Farms*, 639 S.W.3d 352, 365 (Ark. 2022). There are exceptions to this rule. *See Applied Pharmacy Consultants*, 182 F.3d at 606. (collecting cases). Some exceptions include "where the contract fails on some basis, or does not fully address a subject, or disputed performance is compelled under protest." *QHG of Springdale, Inc. v. Archer*, 373 S.W.3d 318, 325 (Ark. Ct. App. 2009). The Eighth Circuit has affirmed summary judgment on an unjust enrichment claim when the party cannot show an exception applies. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1201 (8th Cir. 2015). Because there is an express insurance contract between Mason's and Auto-Owners, Mason's must show

one of the exceptions exists to pursue its unjust enrichment claim.

Mason's makes no argument that an exception applies here. Instead, Mason's argues that contract and unjust enrichment claims can be pled in the alternative or submitted to the jury in the alternative. (Doc. 57, p. 13). This is true. But to submit the alternative claims to the jury, a party must show that an exception to the general rule exists. *See, e.g.*, *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1112 (8th Cir. 2020). In *Cuker*, the court submitted the unjust enrichment claims to the jury because Cuker showed that "the performance-compelled-under-protest exception" applied. *Id.* Here, Mason's has not pointed to any exception to the general rule precluding unjust enrichment claims when there is an express contract. For that reason, Auto-Owners is entitled to summary judgment on Count 3.

D. **Bad Faith**

Mason's asserts in Count 5 that Auto-Owners acted in bad faith in resolving their claim. Arkansas' bad faith standard is rigorous and difficult to satisfy. *Unum Life Ins. Co. Am. v. Edwards*, 210 S.W.3d 84, 87 (Ark. 2005). Mason's asserts two examples of bad faith. First, Mason's asserts Auto-Owners acted in bad faith by overvaluing the property when it included the property's foundation without determining if the foundation was covered property. (Doc. 57, p. 11–12). Second, Mason's asserts that Auto-Owners acted in bad faith based on Mr. Doherty's conduct. *Id.* at 13. Neither example meets Arkansas' rigorous standard.

To successfully assert bad faith, Mason's must show "affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct [was] dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy." *Sims v. State Farm Mut. Auto. Ins. Co.*, 894 F.3d 941, 945 (8th Cir. 2018) (citing *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 664 S.W.2d 463, 465 (Ark. 1984)). "The 'dishonest, malicious, or

8

oppressive' acts must be 'carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge.'" *Id.* (citing *Unum*, 210 S.W.3d at 87).

An insurer acts in bad faith when its agent lies about the existence of coverage, a claims representative is overly aggressive, or the insurer purposefully alters insurance records to avoid large liability. *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 844 (8th Cir. 2003) (citation omitted). On the other hand, insurers do not act in bad faith when a genuine controversy exists regarding coverage, an insurer drags its feet in responding to claims, or even when an insurer is negligent or uses bad judgment, as long as the insurer is acting in good faith. *See id.*; *Tilghman v. Allstate Prop. & Cas. Ins. Co.*, 22 F.4th 752, 755 (8th Cir. 2022); *Sims*, 894 F.3d at 945. Rather than pointing to specific caselaw supporting its arguments, Mason's relies on its general characterization of Auto-Owners' behavior as bad faith.

Auto-Owners did not act in bad faith related to the valuation of the property for two reasons. First, undisputed record evidence shows that Auto-Owners gave Mason's plenty of chances to correct the property's valuation. From November 2018 to January 2019, Auto-Owners contacted Mason's requesting help reconciling the property's valuation with the policy limits. (Doc. 56, ¶¶ 8–10). Auto-Owners eventually sent Mason's a notice of nonrenewal based on the unreconciled value of the property. *Id.* ¶ 11. Second, when Mason's finally disputed the property's valuation, Auto-Owners ordered additional appraisals and based its final payment on the updated appraisal. It is undisputed that Auto-Owners hired CBRE to reappraise the property. *Id.* ¶ 15. Mason's does dispute, however, that Auto-Owners based its final statement of loss on the CBRE evidence. As discussed in the breach of contract section, Mason's is mistaken.

Auto-Owners' proof that it hired CBRE to re-appraise the property and the fact that its final statement of loss was based on the CBRE report is evidence Auto-Owners acted in good faith in

9

trying to resolve Mason's claim.  Mr. Doherty's letter accompanies Auto-Owners' final statement of loss.  (Doc. 41-9, p. 2–6).  Again, that letter states that "[Auto-Owners'] revised statement of loss outlining co-insurance adjustment [is] *based on the CBRE valuation*."  *Id.* at 6 (emphasis added).  Mason's argument that Auto-Owners acted in bad faith by initially using a different valuation report that included the foundation's value is unconvincing.

Mason's also argues Mr. Doherty's conduct shows bad faith.  Both parties point to portions of Mr. Mason's deposition where Mr. Mason and Mr. Doherty discussed temporary roofing to mitigate damage from the open roof and rainwater.  (Doc. 58, pp. 93, 97–98, 103–107).  Mason's claims Mr. Doherty left them in the dark, but there is ample evidence that shows Mason's and Mr. Doherty communicated about the best way to mitigate damage.  *See id.*  And even if Auto-Owners, like Mason's, scoffed at paying for an expensive temporary roof, Mr. Doherty offered lower-cost solutions.  Mr. Doherty also sent Mason's an initial check to help cover some of the damage and temporary repairs.  Mr. Doherty's actions are not the dishonest, malicious, or oppressive acts that characterize valid bad faith claims.

In sum, neither Auto-Owners' valuation methods nor Mr. Doherty's behavior rise to the level of bad faith.  Auto-Owners worked with Mason's throughout the claims process.  Any disputes about coverage are better addressed through the breach of contract claims, rather than a bad faith claim.  Therefore, Auto-Owners' is entitled to summary judgment on Count 5.

E. **Punitive Damages**

Auto-Owners lastly seeks summary judgment on Mason's claim for punitive damages.  The Eighth Circuit recognizes that under Arkansas law, contract and tort claims must be treated separately, with punitive damages dependent on the tort claim's success.  *Shelton v. Kennedy Funding, Inc.*, 622 F.3d 943, 957 (8th Cir. 2010) (citing *L.L. Cole & Son, Inc. v. Hickman*, 665

S.W.2d 278, 281 (1984)). As discussed above, Mason's only tort claim—bad faith—fails. Therefore, Mason's cannot recover punitive damages. Auto-Owners' is entitled to summary judgment on Mason's claim for punitive damages.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that Defendant Auto-Owner's motion for summary judgment is GRANTED. Counts 1, 2, 3, and 5, as well as the punitive damages request, are DISMISSED WITH PREJUDICE. Count 4 remains pending for trial.

IT IS SO ORDERED this 18th day of January, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE